IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3143-FL

| | | |
|---|---|---|
| CHARLES ROBERT BAREFOOT; CHRISTIAN GATON; and RICHARD DANIEL HONEYCUTT, | ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| NURSE DERRY; DR. GONZALEZ; CAMPOS; OFFICER HILL; SARAH REVELL; DR. REARDON;[1] CARLOS DUCHESNE; WARDEN BEELER; and FOUTCH[2], | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter came before the court on the third motion to dismiss, or in the alternative, for summary judgment[3] (DE # 65) and motion to respond out of time (DE # 78) filed by defendants Carlos Duchesne ("Duchesne"), Foutch, Nurse Derry ("Derry"), Dr. Gonzalez-Clanton ("Gonzalez-Clanton"), Dr. Reardon ("Reardon"), and Officer Hill ("Hill") (collectively "defendants"). These motions were fully briefed. Also before the court are plaintiff's motion to amend (DE # 59), motion to proffer evidence (DE # 61), and motion for default judgment (DE # 80). These motions also were

---

[1] The party plaintiff identified as Reirdine has informed the court that the correct spelling of his name is Reardon. The court hereinafter will refer to this defendant as Reardon.

[2] The party plaintiff identified as Falch has informed the court that the correct spelling of this defendant's name is Foutch. The court hereinafter will refer to this defendant as Foutch.

[3] Because the parties attached matters that are outside of the pleadings, the court construes this motion as a motion for summary judgment pursuant to Rule 56.

fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment and motion to respond out of time. The court denies plaintiff's motions.

**STATEMENT OF THE CASE**

On August 19, 2009, plaintiff filed this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against the above-stated defendants as well as defendants Campos, Sarah Revell ("Revell"), and Warden Beeler ("Beeler"). Plaintiff alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged that Foutch and Hill acted with deliberate indifference by denying him a bottom bunk assignment. Upon frivolity review, the court allowed plaintiff to proceed on his Fourteenth Amendment claims against Derry, Gonzalez, Duchesne, Foutch, and Hill, but dismissed as frivolous his claims against the remaining defendants.

On April 19, 2010, defendants filed a motion to dismiss, or in the alternative, for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies prior to filing this action. The court denied defendants' first motion to dismiss, and defendants filed a second motion to dismiss on October 20, 2010, arguing that plaintiff failed to state a claim upon which relief may be granted.

On November 22, 2010, plaintiff filed a motion to amend his complaint, and for the court to reconsider its frivolity order. On July 13, 2011, the court entered an order denying defendants' second motion to dismiss and entering a case management order. The court also granted in part and denied in part plaintiff's motion for reconsideration. The court granted plaintiff's motion as to his allegation that Reardon withheld medical treatment in order to coerce him to cooperate with the

2

government. The court denied the remainder of plaintiff's motion for reconsideration. Finally, the court granted plaintiff's motion to amend his complaint.

On August 12, 2011, plaintiff filed another motion to amend his complaint to include new defendants Officer Petaford ("Petaford") and Nurse Bowery ("Bowery"). Plaintiff subsequently filed a motion to proffer evidence in which he alleges that Nurse Daffeny Andrews ("Andrews") failed to notify him of a scheduled medical appointment and recorded his failure to attend the appointment as a refusal to be treated. In response, defendants filed a motion to stay discovery and to suspend their responses to the pending motions.

On November 29, 2011, the court entered an order granting defendants' motion to stay discovery, but denying their request to suspend their responses to plaintiff's pending motions. The court then directed defendants to respond to plaintiff's motion to amend as well as his motion to proffer evidence, and held them in abeyance until defendants responded.

In the interim, on September 6, 2011, defendants filed a third motion to dismiss, or in the alternative, for summary judgment, arguing plaintiff is unable to establish that they violated his constitutional rights. Alternatively, defendants assert the defense of qualified immunity. These motions were fully briefed.

On January 5, 2012, defendants filed a motion to respond, out of time, to plaintiff's motion to amend and motion to proffer evidence, which was fully briefed. Plaintiff then filed a motion for default judgment, to which defendants responded. Plaintiff thereafter was provided an additional opportunity to respond to defendants' motion to dismiss in response to his allegation that he did not receive a copy of Gonzalez-Clanton's affidavit in support of defendants' motion for summary judgment.

3

## STATEMENT OF FACTS

The facts seen in the light most favorable to plaintiff are as follows. On January 2, 2008, plaintiff was admitted to the Mental Health Department at the Federal Medical Center in Butner ("Butner"), North Carolina to undergo evaluation and treatment pursuant to 18 U.S.C. § 4241(d).[4] Gonzalez-Clanton Aff. ¶ 6. Upon his arrival at Butner, plaintiff completed a health intake assessment/history form and indicated that he was taking the following medications: (1) Flexeril (a muscle relaxer); (2) Elavil; (3) Ibuprofen; and (4) and unspecified pain reliever. Id. ¶ 7. Plaintiff also reported a history of, *inter alia*, a 1994 head injury, as well as pain in his left leg, shoulder, neck, and back. Id. Plaintiff further informed medical staff that he was assaulted by ten (10) prison guards in 2006. On January 31, 2008, defendant Gonzalez-Clanton prescribed plaintiff Tylenol and Ibuprofen. Id. ¶ 8. On February 5, 2008, medical staff increased plaintiff's dosage of Elavil.[5] Id. ¶ 9.

On April 1, 2008, plaintiff attended an appointment with Senior Physical Therapist Hall ("PT Hall"), in response to his complaints of neck pain that increased when he swallowed and a history of neck trauma. Id. ¶ 11. PT Hall examined plaintiff and noted limited left neck rotation (50%) and limited right-side neck bending (25%). PT Hall recommended physical therapy for one to two times per week for four to six weeks to decrease pain and increase range of motion. Id. PT Hall also recommended imaging studies if plaintiff's pain did not improve within one to two weeks.

---

[4] Judge Terrence W. Boyle committed plaintiff to the custody of the Attorney General pursuant to § 4241(d) to determine whether he could be restored to competency to stand trial. Gonzalez-Clanton Aff. ¶¶ 2-3. On March 15, 2011, Judge Boyle determined that plaintiff was competent to stand trial in the criminal case. United States v. Barefoot, No. 5:05-CR-166-BO (E.D.N.C. Mar. 15, 2011).

[5] Elavil is a medication that typically is used to treat symptoms of depression, but that apparently was prescribed to plaintiff for pain relief. Gonzalez-Clanton Aff. ¶ 7. It is unclear from the record whether plaintiff was newly prescribed Elavil on February 5, 2008, or whether his dosage was increased. The record, however, is clear that plaintiff was prescribed a pain medication prior to February 5, 2008. Id. ¶¶ 7-9.

Plaintiff saw a nurse on April 3, 2008, after complaining of chronic pain. Id. ¶ 12. Plaintiff informed the nurse that he was going to discontinue his physical therapy because it increased his pain. Id. The nurse advised him to continue taking Ibuprofen and Tylenol for pain management. Id. On April 8, 2008, PT Hall noted that plaintiff wished to discontinue his physical therapy because the exercises caused him pain. Id. ¶¶ 12-13.

On April 11, 2008, defendant Gonzalez-Clanton examined plaintiff in response to his complaints of right shoulder and neck pain. Id. ¶ 14. Plaintiff informed defendant Gonzalez-Clanton that his neck and shoulder pain originated in 2006 after an assault by a correctional officer in state prison. Id. Plaintiff further informed defendant Gonzalez-Clanton that he experienced neck pain when swallowing food. Id. At the conclusion of his examination, defendant Gonzalez-Clanton noted that plaintiff's range of motion was intact, and that there was no relationship between plaintiff's swallowing and neck pain. Id. For diagnostic purposes, defendant Gonzalez-Clanton ordered a magnetic resonance imaging ("MRI") test of plaintiff's cervical lumbar-sacral (neck/back), right shoulder, and left knee. Id. Defendant Gonzalez-Clanton also instructed plaintiff to continue taking his prescribed Ibuprofen, Tylenol, and Elavil for pain management. Id.

Plaintiff had lumbar spine, shoulder, and knee MRI testing on April 21, 2008. Id. ¶¶ 16, 17, 18. The results for plaintiff's lumbar spine MRI were unremarkable, and indicated that plaintiff had osteoarthritis, as well as nerve impingement. Id. ¶ 16. Plaintiff's shoulder MRI results showed mild arthritis in the joint at the top of his shoulder. Id. ¶ 17. Finally, plaintiff's knee MRI results indicated a considerable degree of chondromalacia involving the medial patellar articulating surface, a small tear involving the body of the medial meniscus, and a small joint effusion. Id. ¶ 18. The recommended treatment for plaintiff's lumbar spine, shoulder and knee conditions was nonsteroidal

5

anti-inflammatory drugs such as Ibuprofen. Id. ¶¶ 16, 17, 18. Additionally, the recommended treatment for plaintiff's knee condition was muscle strengthening exercises as well as rest. Id. ¶ 18. On April 30, 2008, defendant Gonzalez-Clanton and Derry renewed plaintiff's Ibuprofen and Tylenol prescriptions. Id. ¶ 19.

On May 2, 2008, Derry noted that plaintiff complained of pain in and along his side and chest in response to eating white food such as rice or bread. Id. ¶ 20. Plaintiff also complained that he had difficulty swallowing. Id. Derry discussed these issues with the physician, and the physician prescribed continued observation. Id.

On May 9, 2008, Derry examined plaintiff in response to plaintiff's complaints of constant pain in the right side of his head. Id. ¶ 22. Plaintiff also requested an MRI of his left ankle because he was in pain. Id. Derry recommended an electromagnetic radiation ("X-ray") test of his ankle. Id. Plaintiff had an x-ray of his left ankle on May 12, 2008, and the results were normal. Id. ¶ 23.

From June 2, 2008, until June 25, 2008, plaintiff was prescribed Chlorhexindine Gluconate (an oral antiseptic), Elavil renewal, nasal spray, and sun screen. Id. ¶¶ 25-30. Plaintiff was transferred from Butner to a non Division of Adult Correction ("DAC")[6] facility on June 25, 2008. Id. ¶ 30.

On January 15, 2009, plaintiff returned to Butner. Id. ¶ 31. On this date, medical staff conducted an intake screening where plaintiff reported he was taking the following medications: (1) nasal spray; (2) Ibuprofen; (3) Elavil; (4) Baclofen; (5) Aspirin, and (6) Miconazole. Id. Butner

---

[6] Effective 1 January 2012, the State of North Carolina reorganized and consolidated a number of executive agencies. DOC was subsumed into the Department of Public Safety and is now the Division of Adult Correction. See N.C. Gen. Stat. §§ 143B-600(a)(1); -700 et seq.

6

Case 5:09-ct-03143-FL Document 93 Filed 03/23/12 Page 6 of 20

medical staff then determined that plaintiff could continue taking Ibuprofen, Aspirin, and Miconazole, but discontinued his nasal spray, Baclofen, and current dose of Elavil. Id.

On January 24, 2009, plaintiff complained to Andrews that Butner physicians changed his medications each time he returned to Butner following a transfer to another institution. Id. ¶ 32. Gonzalez-Clanton renewed plaintiff's prescription for hydrocortisone cream on January 27, 2009. Id. ¶ 37. Plaintiff then complained of pain on January 29, 2009, and Dr. Newman ordered an MRI of plaintiff's head and spine. Id. ¶ 34.

On February 7, 2009, Andrews observed plaintiff for a mental health evaluation and noted that plaintiff continued to complain 10/10 pain for his back, neck, and head. Id. ¶ 37. Andrews also noted that physicians were in frequent contact with plaintiff via "sick call." Id. On February 13, 2009, Gonzalez-Clanton renewed plaintiff's prescription for Elavil. Id. ¶ 39.

On February 19, 2009, plaintiff had MRI testing on his lumbar spine, cervical spine, and brain. Id. ¶¶ 40-42. The MRI testing revealed osteoarthritis and chronic inflamation of the sinuses. Id.

On March 22, 2009 and March 26, 2009, plaintiff again complained of back pain despite taking Ibuprofen and Elavil. Id. ¶¶ 47, 49. On April 3, 2009, Andrews examined plaintiff, and plaintiff again complained of pain. Id. ¶ 50. Andrews noted that plaintiff was assigned a top bunk and that she regularly observed him climb the latter to his top bunk and pushing his roommate in a wheelchair without difficulty. Id.

On April 5, 2009, Foutch examined plaintiff after he complained of chest pain, shoulder pain, and numbness in his arm. Id. ¶ 52. On this date medical staff administered an electrocardiography ("EKG") test and noted no restriction in his blood supply. Id. Plaintiff was given Ibuprofen. Id.

7

On May 22, 2009, Newman evaluated plaintiff in response to plaintiff's complaints of shoulder pain and pain in his head when he urinates. Id. ¶ 61. Plaintiff also informed Newman at this appointment that he had difficulty getting on the top bunk. Id. Newman noted that the previous medical notes indicated that plaintiff's pain is functional and that it likely is secondary to his mental illness. Id.

On May 28, 2009, plaintiff met with his treatment team. Id. ¶ 62. Plaintiff again complained of pain in his shoulder and back, as well as burning in his head when he urinates and eats. Id. A physician on his treatment team suggested that plaintiff be prescribed Abilify, an antipsychotic medication. Id. Following this appointment, plaintiff refused all medications except nasal spray. Id.

On July 8, 2009, Derry examined plaintiff in response to plaintiff's complaints of chronic pain. Id. ¶ 72. Derry referred plaintiff to the Butner chronic pain clinic. Id. Plaintiff continued to complain of chronic pain on July 25, 2009, as well as the following day, stating that his head and shoulders hurt when he urinated. Id. ¶¶ 73, 74. Plaintiff began refusing medication on August 9, 2009. Id. ¶ 76.

On September 17, 2009, plaintiff met with his treatment team and stated that he would resume taking his prescribed pain medications. Id. ¶ 79. On October 21, 2009, and November 10, 2009, plaintiff again refused to take medication. Id. ¶¶ 82, 84.

On November 13, 2009, Dr. Seys ("Seys"), a Doctor of Pharmacy and the pain management pharmacist at Butner, evaluated plaintiff for chronic pain management. Id. ¶ 85. Plaintiff admitted to Seys that he had not been taking his Elavil or Ibuprofen. Id. Seys made the following recommendation: (1) calcium; (2) Gabapentin for pain management; (3) a neurology consult to rule

8

out multiple sclerosis; (4) continuance of Ibuprofen for somatic pain; (5) discontinuance of Elavil due to non-compliance with the medication; and (6) follow-up in two weeks. Id.

On December 23, 2009, a neurologist contracted by the DAC examined plaintiff. Id. ¶ 89. Plaintiff complained that his head burned in a particular spot when he ate and urinated. Id. Plaintiff also complained of pain on the right side of his tongue when eating spicy foods, a patchy and burning sensation, and stabbing pain in his lumbar and cervical spine area. Id. The neurologist found that plaintiff's complaints did not follow any know anatomical or meaningful pattern, and that he could not determine the cause of plaintiff's chronic pain. Id. ¶ 89. The neurologist also found that plaintiff did not have multiple sclerosis. Id. The neurologist recommended that plaintiff continue taking Gabapentin. Id.

On January 9, 2010, plaintiff reported to medical staff that his discomfort was tolerable. Id. ¶ 93. On January 14, 2010, plaintiff met with his treatment team and refused to take psychotropic medications. Id. ¶ 94. Plaintiff informed his team that he believed Gabapentin was a psychotropic medication. Id. Plaintiff later resumed taking Gabapentin. Id. ¶ 102. Plaintiff thereafter continued his treatment with Seys in the chronic pain clinic. Id. ¶¶ 102, 106, 109.

9

**DISCUSSION**

A.   Motion to Amend and Motion to Proffer Evidence

Plaintiff's motion to amend and his motion to proffer evidence both seek leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15. Rule 15 provides that a plaintiff may amend his complaint after twenty-one (21) days from service of a Rule 12(b) motion only with consent of the opposing party or leave of the court. See Fed. R. Civ. P. 15(a)(2). Leave to amend must be freely given when justice so requires, and will be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. See Laber v. Harvey, 438 F.3d 404, 425 (4th Cir. 2006) (en banc).

Federal Rule of Civil Procedure 18(a) provides: "A party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." When a plaintiff seeks to bring multiple claims against multiple defendants, he must also satisfy Federal Rule of Civil Procedure 20. Rule 20(a)(2) provides that persons may be joined in one action as defendants if, first, any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and second, any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a).

The court is mindful of the purpose of Rule 20, which "is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974) (citing 7 C. Charles Alan Wright, Federal Practice and Procedure § 1652 at 265 (1972)). This, however, does not permit a plaintiff to join multiple defendants into a single lawsuit where the claims against the defendants are

10

unrelated. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); See Green v. Beck, No. 5:10-CT-3003-D, 2011 WL 666258, *1 (E.D.N.C. Feb. 14, 2011), dismissed, 2011 WL 2144292 (4th Cir. June 1, 2011). Rather, "[a] buckshot complaint that would be rejected if filed by a free person-say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions-should be rejected if filed by a prisoner." Id. at 607.

Here, plaintiff's motion to amend seeks to add Petaford, Bowery, and Andrews as defendants to this action. Plaintiff states that these defendants acted with deliberate indifference to his medical needs in violation of the Fourteenth Amendment to the United States Constitution because they failed to respond to his call light on July 30, 2011. Because this new claim involves new defendants and conduct which occurred over two years after he filed his original complaint, it is not sufficiently related to satisfy Rule 20(a). Additionally, the court finds that defendants would face substantial prejudice if plaintiff were permitted to amend his complaint to include these defendants at this point in the litigation. Finally, the court finds that allowing the amendment would be futile because, as set forth below, the court has determined that the current defendants are entitled to qualified immunity. Thus, the court DENIES plaintiff's requests to amend his complaint.

B.   Motion for Default Judgment

Plaintiff filed a motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 37(b)(A)(vi), for defendants' alleged failure to respond to his interrogatories and discovery motions. Rule 37(b)(A)(vi) allows a court to enter a default judgment against a party that disobeys a discovery order. In this case, however, the court stayed discovery on November 29,

11

2011. Thus, defendants have not disobeyed a discovery order, and plaintiff's motion for default judgment is DENIED.

C.      Motion for Continuance

Before addressing defendants' motion for summary judgment, the court considers plaintiff's request for a continuance to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)).[7] "As a general rule, summary judgment is appropriate only after adequate time for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, Rule 56(d) allows a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted). However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." Young v. UPS, 2011 WL 665321, *20 (D.Md. Feb. 14, 2011). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be essential to [the] opposition. " Scott v. Nuvell Fin. Servs., 2011 WL 2222307, *4 (D. Md. June 7, 2011) (quotation and citation omitted). A non-moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought for discovery would not have by itself

---

[7] Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) previously was codified as Rule 56(f). See Fed.R.Civ.P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged . . . Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

12

created a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

Here, plaintiff has failed to show that discovery would develop evidence crucial to material issues before the court. Thus, plaintiff's motion for a continuance to conduct discovery pursuant to Rule 56(d) is DENIED.

D.   Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

   2.   Analysis

      a.   Deliberate Indifference to Serious Medical Needs

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the

13

law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S.223 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 555 U.S. at 236.

The court first focuses on whether plaintiff established a constitutional violation. The standard for deliberate indifference under the Fourteenth Amendment is the same as under the Eighth Amendment. Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that

14

"subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming, without deciding, that plaintiff is able to establish the objective prong of the Eighth Amendment test, the court turns to the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Although plaintiff alleges that defendants acted with deliberate indifference to his chronic pain, the evidence in the record reflects that plaintiff received extensive diagnostic testing to determine the etiology of his chronic pain. For instance, Gonzalez-Clanton referred plaintiff for MRIs on his lumbar, right shoulder, and left knee on April 16, 2008. Gonzalez-Clanton Aff. Attach. 1. On May 12, 2008, Derry referred plaintiff for an MRI on his left ankle. Id. Attach. 2. Dr. Newman referred plaintiff for MRIs on his lumbar spine, cervical spine, and brain on February 19, 2009. Id. Attach. 3. The results of the MRIs revealed plaintiff suffered from osteoarthritis, mild arthritis, and a small tear in his medial meniscus. Gonzalez-Clanton Aff. ¶ 18 and Attach. 3. The

recommended treatment for plaintiff's conditions was non-steroidal anti-inflammatory drugs, which plaintiff was prescribed. The record further reflects that a neurologist examined plaintiff on December 23, 2009, in connection with plaintiff's complaints of chronic pain and concerns that he had multiple sclerosis. Id. ¶ 90, and Attach. 4. The neurologist found that plaintiff's chronic pain was of an unknown etiology, and ruled out multiple sclerosis as a diagnosis. Id. Finally, there is no evidence that defendants refused to provide plaintiff medical care to coerce him to cooperate the government.

In addition to extensive diagnostic testing, the record reflects that plaintiff received thorough and extensive pain management treatment including physical therapy, a near continuous supply of pain medications, and anti-inflammatory medications. Plaintiff, however, states that medical staff would discontinue his medications each time he was transferred to Butner. Upon transfer to Butner in January 2, 2008, the only medication the medical staff did not renew was his prescription for Flexeril, a muscle relaxer. Upon his transfer to Butner on January 15, 2009, the only medications that were not renewed was his prescription for nasal spray and his prescription for Baclofen, a muscle relaxer. Gonzalez-Clanton explained in his affidavit that he discontinued plaintiff's use of muscle relaxers upon his admission to Butner because these medications are not approved for long term use. Id. ¶ 31. Plaintiff, however, was prescribed other medications such as Tylenol, Ibuprofen, and Gabapentin for pain relief.

Plaintiff also alleges that, at times, Gonzalez-Clanton negligently delayed the renewal of his pain medications for one to two weeks.[8] However, negligence or malpractice in treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. 105-106. Additionally, the record

---

[8] The court notes that plaintiff does not provide any factual support for this claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required).

16

reflects that plaintiff refused to take his prescribed pain medications on several occasions. Gonzalez-Clanton Aff. ¶¶76, 82, 84.

Plaintiff does not dispute that he received MRIs, physical therapy, and medicinal therapy for his alleged chronic pain. Rather, plaintiff alleges that defendants' treatment did not offer effective relief. However, the fact that defendants' treatment of plaintiff was not effective does not give rise to a constitutional violation. See e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009). Based upon the foregoing, the court finds that plaintiff's allegations concerning his request for particular medications or treatment amounts to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. Thus, plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation. Thus, defendants are entitled to qualified immunity.

b.  Bottom Bunk Assignment

Plaintiff alleges that Foutch and Hill refused to provide him with a bottom bunk assignment in violation of the Fourteenth Amendment. Plaintiff's allegations in connection with this claim are inconsistent and difficult to follow. Plaintiff states that he was assigned a bottom bunk in the "bed book," and that he often had a bottom bunk assignment while at Butner. Plaintiff, however, presents no evidence of any Butner medical order stating that plaintiff be provided a bottom bunk assignment. Further, Gonzalez-Clanton submitted an affidavit stating that plaintiff's medical records do not reflect an order for a bottom bunk pass during the relevant time period. Gonzalez-Clanton Aff. ¶ 199. Although plaintiff states that a physician assigned him a bottom-bunk from July 20-30, 2007, while he was incarcerated at Metropolitan Correctional Center and that he was assigned a

17

bottom bunk while incarcerated at Piedmont Correctional Center, this does not establish that he requested or was provided a bottom bunk assignment at Butner.

Plaintiff additionally states that Newman assigned him a bottom bunk in July 2009, at Butner. The record, however, indicates that plaintiff expressed to Newman difficulty getting onto the top bunk in May 2009, but that Newman determined that his pain was functional and did not assign a bottom bunk pass. Gonzalez-Clanton Aff. ¶ 61. Further, Gonzalez-Clanton opined that he did not believe that plaintiff's medical condition required a bottom-bunk assignment. Id. In particular, Gonzalez-Clanton states that medical staff observed plaintiff on several occasions engaging in daily activities without any trouble, and that plaintiff participated in the garden club and walked for exercise.[9] Additionally, there is evidence that plaintiff's complaints of chronic pain were exaggerated and related to his mental health. See Id. ¶¶ 61, 89. Finally, Foutch recorded a note in plaintiff's medical file stating that an officer informed her that plaintiff volunteered to sleep in the top bunk if an inmate of his choice could move into his cell. Id. ¶ 179.

Based upon the foregoing, the court finds that there is no evidence that defendants acted with the purpose of causing plaintiff harm. Rather, the record reflects that the medical staff was attentive to plaintiff's needs and provided him extensive medical care.[10] To the extent plaintiff was not provided a medical order for a bottom bunk pass, the decision was based upon a belief that it was not warranted. At most, this decision could be construed as negligence. Additionally, without any bottom-bunk assignment in his medical records, at most, the alleged failure of Foutch and Hill to

---

[9] Plaintiff admits that he participated in the garden club and walked for exercise.

[10] The court notes that it may rely upon the affidavits of medical personnel in determining whether a prisoner has received adequate medical treatment. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd by, 676 F.2d 690 (4th Cir. 1982).

18

provide plaintiff a bottom bunk could be construed as negligence. Negligence is not actionable pursuant to 42 U.S.C. § 1983. Thus, plaintiff failed to allege a constitutional violation, and Foutch and Hill are entitled to qualified immunity for this claim.[11]

  c.  Failure to State a Claim

Plaintiff states in his first response to defendants' motion for summary judgment (DE # 76) that his contact with Foutch was limited to her taking his blood pressure. Pl's Resp. (DE # 76 p. 37.) Plaintiff further states that his contact with Reardon was limited to Reardon saying "good morning in the hallway when passing." Id. As for Hill, plaintiff states that Hill "work[ed] once in a while on 1-H unit and we would say hi to each other." Id. These allegations are insufficient to allege deliberate indifference on behalf of Foutch, Reardon, or Hill. Accordingly, even if Foutch, Reardon, and Hill were not entitled to qualified immunity, plaintiff is not entitled to relief because he fails to state a claim upon which relief may be granted.

As for Duchesne, plaintiff states that his contact with this defendant is based upon his failure to respond to plaintiff's administrative remedies. "However, participation in the administrative remedy procedure is not the type of personal involvement necessary to state a claim based upon supervisor liability." Abdel-Aziz v. Johns, No. 5:07-CT-3095-FL, 2008 WL 4279696, at *3 (E.D.N.C. Sept. 15, 2008) (citing Paige v. Kupec, No. Civ. A. AW-02-3430, 2003 WL 23274357, at *1 (D.Md. Mar. 31, 2003), aff'd, 70 F. App'x 147 (4th Cir. July 31, 2003) (per curiam); Bonds v. Fox, No. 1:08-CV78, 2008 WL 2543371, at *3 (N.D.W. Va. June 23, 2008). Thus, even if Duchesne were not entitled to qualified immunity, plaintiff is not entitled to relief because he fails to state a claim upon which relief may be granted.

---

[11] The court notes that plaintiff's allegations regarding a bottom bunk pass are inconsistent and that it appears that he has obtained a bottom bunk pass since the filing of this action.

19

E.  New Claims

Plaintiff raises various new claims in the many pleadings he filed subsequent to defendants' motion for summary judgment. Plaintiff, however, has not requested leave to court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a) to include any new claim. Because plaintiff has not moved this court to amend his complaint pursuant to Rule 15(a) to include any new claim, the new claim is not properly before the court and are DISMISSED without prejudice. See United States v. Jones, 842 F.2d 1293, *1 (4th Cir. Mar. 9, 1988); Crump v. N.C. Dep't of Corr., No. 3:05CV325-02-MU, 2009 WL 2738459, *5 (W.D.N.C. Aug. 26, 2009).

## CONCLUSION

For the reasons set forth above, plaintiff's motion to amend (DE # 59), motion to proffer evidence (DE # 61), and motion for default judgment (DE # 80) are DENIED. Defendants' third motion to dismiss, or in the alternative, for summary judgment (DE # 65) and motion to respond out of time (DE # 78) are GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 23rd day of March, 2012.

/s/ Louise W. Flanagan
LOUISE W. FLANAGAN
United States District Judge